IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIAN M. POWELL,<br><br>       Petitioner,<br><br>   v.<br><br>WILLIAM KNIPP,<br><br>       Respondent. | Case No.: C 12-5985 YGR (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

The matter is now before the Court for consideration of Darian M. Powell's ("Petitioner") pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his 2008 conviction in Santa Clara Superior Court. For the reasons set forth below, the petition for such relief is DENIED. In addition, no certificate of appealability will be issued.

## BACKGROUND

**I.   Case History**

In 2008, a Santa Clara Superior Court jury found Petitioner guilty of unlawful sexual intercourse with a minor 10 years old or younger. (Ans., Ex. 6 at 1.) The jury also found Petitioner guilty of exhibiting harmful matter to a minor for purposes of seduction and sexual gratification. (*Id.*) The trial court sentenced Petitioner to a term of 25 years-to-life in state prison. (*Id.*) The California Court of Appeal affirmed the judgment. (*Id.*) Petitioner's direct

appeal was denied by the California Supreme Court. Petitioner did not file a petition for a writ of habeas corpus in the state courts.

On November 26, 2012, Petitioner filed this federal habeas petition, and on March 4, 2012, he filed an amended petition. Respondent was ordered to show cause why the petition, as amended, should not be granted. Respondent filed an Answer with a supporting memorandum and exhibits. Petitioner filed a Traverse.

**II.     Facts**

Evidence presented at trial showed that Petitioner raped and exhibited harmful matter to his daughter, who was a minor at the time. (Ans., Ex. 6 at 2.) The appellate court summarized the factual background:

> The victim is the daughter of defendant and L.H., and she was born in 1997. After defendant and L.H. ended their nonmarital relationship, custody arrangements caused the victim to have unsupervised visits with defendant from 10:00 a.m. to 6:00 p.m. every Sunday.
>
> During some of these visits, and at a time when the victim was 10 years old or younger, defendant would rape her. He forced himself on her for purposes of sexual intercourse about 10 times—sometimes after or while watching pornographic movies. She would tell him to desist and invariably would try to escape, but he would ignore her and sometimes would hold down her arms, which she thought he did to block her from escaping.

(*Id.*)

As grounds for federal habeas relief, Petitioner claims: (1) the trial court improperly denied his motion to represent himself a trial, and (2) the trial court improperly allowed the victim to testify via closed-circuit television.

**STANDARD OF REVIEW**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court

unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

**I.    *Faretta* Motion**

Petitioner claims that the trial court improperly denied motion to represent himself under *Faretta v. California*, 422 U.S. 806, 832 (1975). The state appellate court described the relevant facts:

> On August 27, 2008, the trial court held a *Marsden* hearing, i.e., a hearing to consider [Petitioner]'s request to replace his current counsel with new counsel, as authorized by *People v. Marsden* (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (*Marsden*). The court denied the motion. Thereupon [Petitioner] declared that he wanted to make a *Faretta* motion, i.e., a motion to represent himself as authorized by *Faretta v. California* (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (*Faretta*).

3

The trial court questioned defendant. He stated that he had represented himself at a previous trial to its completion. He was taking Geodon (ziprasidone), a drug used to treat schizophrenia and the manic phases of bipolar disorder, and Paxil (paroxetine hydrochloride), an antidepressant drug, because he was hearing voices and was depressed. He stated that the medications were ineffective—he was still hearing voices and his depression was severe. He further stated that he would not object if the court considered an evaluation by Brad Novak, M.D., a psychiatrist, written in connection with a prior competence hearing.

The trial court reviewed Dr. Novak's report. The court questioned defendant to ensure he understood the legal ramifications of representing himself, and defendant stated lucidly that he did. He acknowledged that he had been committed to mental health institutions three times for short-term evaluations, two of which followed suicide attempts.

Defendant continued. He asserted that he heard voices every day and was hearing them as he spoke. The voices told him what to do, including the manner of conducting his defense. The voices were advising him to represent himself.

The prosecutor argued that [Petitioner]'s goal was to delay the proceedings. "[T]he medical reports indicate that he's malingering and that he's trying to avoid criminal responsibility and he's ... laid a record for that this morning" by talking about what the prosecutor suspected were spurious auditory hallucinations.  The prosecutor asked [Petitioner], "if you were granted the status to represent yourself today, are you prepared to go forward with trial today?" [Petitioner] responded, "No."  The prosecutor reminded [Petitioner] and the trial court that this was the day trial was set to begin.

The trial court noted that a recent United States Supreme Court decision had announced separate standards for competence to stand trial and to represent oneself during the trial.  (*See Indiana v. Edwards* (2008) 554 U.S. 164, 167, 174, 177–178, 128 S.Ct. 2379, 171 L.Ed.2d 345 [holding that the Sixth Amendment permits states to require mentally impaired [Petitioner]s to be tried represented by counsel when, though impaired, they are competent to stand trial].)  The prosecutor commented that the court could deny the *Faretta* motion on the procedural ground that [Petitioner] was not prepared to proceed to trial that day.

The trial court ruled: "Mr. Powell, the Court denies your request for in pro [.] per[.] or self-representation status, based upon the fact that this is the time and place for trial and that you're not capable of going forward at this time [¶] Further, based upon your answers to my questions, even though Dr. Novak has

made some findings, for purposes of the record, it's apparent to me that you are depressed, based upon what I'm observing. [¶] With respect to your mental issues, I'm not capable of responding to those at this particular point in time. I'm not qualified to do so. But the Court's of the opinion that if the Court were to grant your in pro[.] per[.] status, you would need time to proceed, and that this matter has been set for trial at this time."

Trial did not begin that day, however. The trial court's attention was taken up with other important pretrial matters.

Immediately after the trial court denied [Petitioner]'s *Faretta* motion, it held a hearing on the prosecutor's motion to have the victim testify via closed-circuit television. The hearing on the closed-circuit-testimony motion continued the next day, August 28, 2008, and still did not reach a resolution. The trial court ordered the hearing to continue on September 2, after an intervening weekend and the Labor Day holiday, when the courthouse would be closed. It appears that the hearing did resume on September 2; it may have continued on September 3, although the record is unclear on that point. The hearing concluded on September 8, after another intervening weekend. Jury selection began on September 10 and continued to the next day, when it concluded and the jury was sworn. The prosecution immediately began to present evidence.

(Ans. Ex. 6 at 3–5.)

The California Court of Appeal concluded that the trial court did not abuse its discretion in denying Petitioner's *Faretta* motion because Petitioner's request was untimely insofar as it had been made on the day trial was set to begin. (*Id*. at 6-7.) The appellate court noted that the proceedings continued "immediately" after the ruling and "without substantial interruption" until presentation of the evidence to the jury. (*Id.* at 6.) Furthermore, the appellate court rejected Petitioner's claim that he was unable to make a timely *Faretta* motion due to the court's delay in reviewing his *Marsden* motion, because the record showed that Petitioner did not actually submit his *Marsden* motion to the court until the hearing on the *Faretta* motion (August 27, 2008), which was also the day trial was set to begin. (Ans. Ex. 6 at 7-8.)

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta*, 422 U.S. at 832. But a defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of

5

securing delay. *Id*. at 835.  The *Faretta* language describing Faretta's request to represent himself as having been made "weeks before trial," 422 U.S. at 835, is part of the holding of the Court, and thus is "clearly established Federal law, as determined by the Supreme Court of the United States," for purposes of relief under the current version of 28 U.S.C § 2254(d). *Moore v. Calderon*, 108 F.3d 261, 265 (9th Cir. 1997).  *Faretta* clearly established some timing element, but not know the precise contours of that element beyond the fact that requests made "weeks before trial" are timely. *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005).  Because the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts, including state courts, are free to do so, as long as they comport with the Supreme Court's holding that a request made "weeks before trial" is timely. *Id*.

The state courts' decision that the *Faretta* motion was untimely because it was made on the day trial was set to begin was not contrary to or an unreasonable application of clearly established federal law. *See id.* (finding California court's decision neither contrary to nor unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d) when it found that Petitioner's *Faretta* request on first day of trial before jury selection untimely). Furthermore, Petitioner's assertion that he could not submit the *Faretta* motion earlier because he was waiting for a ruling on his *Marsden* motion is belied by the record, which shows that he submitted his *Marsden* motion on the same day (August 27, 2008) as his *Faretta* motion. (Ans. Ex. 6 at 7-8.)  Because the state courts did not contradict or unreasonably apply clearly established federal law in denying the *Faretta* claim, federal habeas relief is not warranted on this claim.

**II.    Allowing the Victim to Testify via Closed-Circuit Television**

Petitioner asserts that the trial court's decision to allow the victim to testify via closed-circuit television violated his constitutional right to confrontation.  Specifically, Petitioner contends that he should have been given the opportunity to confront the witness in person. The appellate court described the relevant facts:

> The section 1347[1] hearing produced testimony that at the preliminary examination on July 10, 2008, a jailer had seen defendant in a "very angry" state; he was "punching the walls inside his holding cell, his knuckles were bloody," and he told jailers "we would have to shoot him to shut him up." Later that day, defendant was cursing in the courtroom, and court personnel confined him in layers of restraints. A court bailiff testified about these incidents in the same vein. The victim was not present for the preliminary examination, but in confirming the foregoing accounts, San Jose Police Detective Gary Buhay testified at the section 1347 hearing that the victim told him she had not wanted to tell the school principal about the abuse because, it may be inferred from Buhay's testimony, she had been afraid that defendant would be angry . . . Defendant was intimidating and manipulative and on one occasion had attacked his daughter, hitting her in the face. The mother felt that her daughter would suffer emotional distress, possibly of an extreme nature, if forced to testify in defendant's direct presence, unmediated by closed-circuit television.
>
> A licensed clinical social worker employed as a therapist, including for families and children, testified that she conducted counseling sessions with the victim on five occasions, each about 45 or 50 minutes long . . . The social worker was confident that the victim would suffer serious and severe emotional distress if forced to testify in the courtroom . . .
>
> Thereafter the victim testified during the trial via two-way closed-circuit television. As she testified, she was seated in a separate jury deliberation room in the courthouse. The monitor in that room transmitted a video feed showing defendant, defense counsel, and the prosecutor in the courtroom. The monitor was turned away from the victim, but she had the ability to orient it so she could view it if she wished.

(Ans. Ex. 6 at 8–10.)

On appeal, Petitioner argued that the trial court did not make a sufficient finding that the victim would have been traumatized by his presence because the trial court's ruling relied on the testimony of a social worker and the victim's mother, and not on the testimony of the victim herself. (Ans., Ex. 6 at 8.) The California Court of Appeal correctly noted that Confrontation Clause requires face-to-face confrontation of adverse witnesses, but that there are exceptions where the witness would suffer harm from testifying face-to-face. (*Id.* at 11-12 (citing *Maryland v. Craig*, 497 U.S. 836, 855 (1990).) The appellate court rejected Petitioner's argument that the victim's mother and the social worker were qualified to

---

[1] Section 1347 provides for testimony via closed-circuit television.

7

anticipate the victim's reaction to testifying in Petitioner's presence. (*Id*. at 14.) The appellate court then found that there was "substantial" evidence that the victim would suffer "great emotional distress if forced to testify, to the point that she might not be able to provide a useful account of events for the jury." (*Id.*)  As a result, the appellate court upheld the trial court's decision to allow the victim to testify via closed-circuit television. (*Id*.)

The Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. *See Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (placement of screen between defendant and child sexual assault victims during testimony against defendant violated defendant's confrontation clause rights).  This right may be restricted in certain situations, however, such as where there is evidence that child-abuse victim's welfare would be jeopardized by testifying in the presence of the defendant. *Craig*, 497 U.S. at 855.  In such circumstances, the trial court may use a closed-circuit television procedure, such as the one used here, that allows for cross-examination of the witness. *See id.* at 855-57.

The California Court of Appeal reasonably concluded that there was sufficient evidence to allow the victim to testify via closed-circuit television.  The social worker and the victim's mother testified to the likelihood of inflicting trauma on the victim if she was forced to testify in Petitioner's presence.  In addition, there was evidence of Petitioner's violent behavior both in jail and previously against the victim.  The state courts could reasonably conclude under these circumstances that the state had adequately proved a need for the victim to be in a separate room from the Petitioner during her testimony.  As a result, under *Craig*, there was no violation of the Confrontation Clause, and habeas relief is not warranted on this claim.

**III.    Ineffective Assistance of Counsel**

In his amended petition, Petitioner only lists the two claims discussed above.  Between his "Statement of the Case" and his "Memorandum In Support of Petition for Writ of Habeas Corpus," however, he states that appellate counsel was ineffective in failing to raise a claim

1  that trial counsel was ineffective. (Amend. Pet. at 10-12.[2]) If this is meant to be a claim for
2  federal habeas relief on the grounds of ineffective assistance of appellate counsel, it is not
3  clear what Petitioner refers to, as appellate counsel did claim that trial counsel was ineffective
4  (by failing to request that the trial court explain the reasons for imposing consecutive and
5  upper-term sentences). (Ans. Ex. 6 at 32.) Petitioner does not explain what additional claims
6  of ineffectiveness by trial counsel, if any, should have been argued on appeal. In his *Faretta*
7  claim, Petitioner makes various assertions that his trial attorney was ineffective in failing to
8  conduct an adequate investigation into witnesses and defenses. (Amended Petition at 17-51.)
9  He does not raise those arguments as an independent claim for federal habeas relief, however,
10 nor could he as such claims have not been exhausted. (*See* Ans. Exs. 6, 7 (claims were not
11 presented to the California Supreme Court or the California Court of Appeal).) Nevertheless,
12 in the event Petitioner means to make a claim of ineffective assistance of trial counsel, the
13 Court explains why the claim, which is largely conclusory, lacks merit. *See* 28 U.S.C. §
14 2254(b)(2) (district court may deny unexhausted claim on its merits).

15  Petitioner alleges that his trial counsel did not prepare for trial by preparing or
16 interviewing witnesses, and did not adequately follow up on Petitioner's asserted defenses. A
17 claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth
18 Amendment right to counsel, which guarantees not only assistance, but effective assistance of
19 counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging
20 any claim of ineffectiveness must be whether counsel's conduct so undermined the proper
21 functioning of the adversarial process that the trial cannot be relied upon as having produced a
22 just result. *Id.* In order to prevail on a Sixth Amendment ineffectiveness of counsel claim,
23 Petitioner must establish two things. First, he must establish that counsel's performance was
24 deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing
25 professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was

---

[2] The page numbers cited to in this Order refer to the pagination in the upper right hand corner of the 66-page document on the Court's electronic docket (docket number 11) that includes the form amended petition and all attachments thereto, not the page numbers that Petitioner assigned to portions of the document at the bottom of certain pages.

9

1  prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that,
2  but for counsel's unprofessional errors, the result of the proceeding would have been
3  different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine
4  confidence in the outcome.  *Id.*

5  Petitioner is correct in asserting that his trial counsel did not interview or call witnesses
6  for Petitioner's defense.  However, the record shows that on three occasions, trial counsel
7  asked Petitioner for the witnesses he wished to call, but Petitioner refused to provide them
8  because he did not "trust him."  (*See* Ans., Ex. 2C.)  Furthermore, Petitioner has not shown
9  any likelihood that a different outcome would have resulted from trial counsel's interviewing
10 or calling witnesses.  Petitioner only identifies one favorable witness, his former roommate
11 Arthur Jackson.  Mr. Jackson's proffered testimony is set forth in a declaration that simply
12 describes Petitioner's general habits, and at one point states, "[a]ll the time [Petitioner] lived
13 at my house I never heard him beat [the victim] or even yelling at her for anything.  Never did
14 I observe him doing or saying anything inappropriate or hear [the victim] crying."  (Jackson
15 Decl. (attached to Amend. Pet.) at 1.)  Jackson's failure to observe the crimes does not mean
16 they did not occur.  Clearly, Petitioner could have committed the crimes when Mr. Jackson
17 was not home or could not see or hear them.  Moreover, Mr. Jackson's description about
18 Petitioner's general habits and practices does not contradict or undermine the victim's
19 testimony that Petitioner raped her.  Mr. Jackson also provides no grounds for questioning the
20 victim's credibility or motive in testifying against Petitioner.  Petitioner does not identify any
21 other witnesses that counsel could have called, describe the testimony they would have
22 provided, or explain how such testimony created a reasonably likelihood of a different
23 outcome in the case.  Petitioner has not shown that the counsel was deficient or that he
24 suffered prejudice under *Strickland* from trial counsel's alleged failure to interview or call
25 witnesses for the defense.

26 Petitioner also alleges that counsel did not adequately investigate his defenses, but this
27 allegation is simply conclusory.  Petitioner does not describe what defenses he had that
28 counsel could have pursued, identify what evidence existed to support such defenses, or show

10

how any of the defenses would have succeeded.  Petitioner's simple assertion that counsel did not adequately pursue or prepare his defenses does not, without more, establish a violation of his Sixth Amendment right to effective assistance of counsel.

## CONCLUSION

For the foregoing reasons, this Court DENIES the Petition for Writ of Habeas Corpus.  A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:   July 22, 2014

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**